Good morning, your honors. Connor Caron for Plaintiff's Appellate, J. Doe 1. We're here today to discuss an upsetting, fact-laden Title IX case. It was dismissed below. Excuse me, it's a deliberate indifference Title IX case alleging deliberate indifference to student-on-student sexual harassment. It was dismissed below on summary judgment on the deliberate indifference element. For that reason, I will address that element first on this appeal. Fortunately, we have helpful clarification from the Binding of Residential Decision, Brown v. Harris. I'm sorry, before you get there, can you clarify one factual step you mentioned as fact-laden? What was factual? What happened with the criminal charges? So sometime in July, the parent, the mother and Jane Doe go to the police, and then somehow there's a signed affidavit saying, I don't want this part of the case. Can you explain what happened? Yes, your honor. Both Jane Doe 1 and the other individual, Jane Roe 1, when they approached the police department, they were advised by the police, correctly or not, that there was insufficient evidence to proceed with criminal charges. And given that the plaintiff, Jane Doe 1, feared retaliation on Maricopa High School's campus from Tyler Gordon, she was motivated to sign that complaint refusal form, which is why it says what it says on the complaint refusal form. And then, but they thought that the police were investigating otherwise. Plaintiff's testimony is actually equivocal on that front. At the beginning of her testimony, she says she understood the investigation was closed at the time she signed that complaint refusal form. Later, she's asked, you understand that the police are conducting an investigation? And she says yes, but the upshot of her testimony is that she really does not have knowledge of the state of the police investigation from the signing of that complaint refusal form onward. Thank you. So in late 2023, an en banc panel of this court decided Brown v. Arizona and helpfully clarified several sets of circumstances or types of fact patterns that may give rise to a reasonable conclusion of deliberate indifference by the funding recipient. I'll run through a couple of those briefly. Firstly, citing the case of Doe v. School District No. 1, a tenth-circuit case from 2020, the Brown court identified a, quote, unquote, failure to investigate numerous complaints of harassment and taking little, if any, action to prevent the harassment as a type of fact pattern that may indicate deliberate indifference. Secondly, citing Simpson v. University of Colorado Boulder, another tenth-circuit case from 2007, Brown identified, you know, circumstances demonstrating an obvious risk of future Title IX violations coupled with an inadequate response. Counsel, in Terence Sack, when we looked at that issue, I think there was a failure to investigate or immediately investigate. And I think we held that it was, you know, negligence is not enough. Why, even if we were to agree with you that the school did not do its best in providing the adequate protections to the petitioner, why isn't it enough just to say, well, you know, while they may have been negligent, what's the indifference? I guess that's the question. In addition to the fact patterns analogous to Brown, Terence Sack helpfully identified, based on the Odin case, that were a delay in investigating or a delay in responding either prejudices the victim or represents a deliberate attempt at sabotaging the orderly resolution of the complaint that may sustain a finding of deliberate indifference. And which are you arguing is here? Both, Your Honor. How did they do that? Firstly, with respect to prejudice for the delay in investigating. The facts here are that there was a nearly five-month delay to initiate any investigatory response in response to actual knowledge of the off-campus student-on-student harassment. There's evidence in the record indicating that there were multiple potential witnesses that would have corroborated plaintiff's account, other victims of Tyler Gordon and other witnesses to his sexual character, namely the identities of the individuals on the list, which was deleted before the school could actually apprehend it. The cases indicate that a failure to interview pertinent witnesses may prejudice the plaintiff. But isn't it true that the school didn't even know the name of Tyler Green for a long time? That was true with respect to the initial voicemail on July 25th when plaintiff's mother indicated that there was an individual on the wrestling team that had raped the plaintiff, but the name was disclosed per the deposition testimony as early as August 27th. What about August 27th? So is that before the school started? That's pretty much directly contemporaneous. I believe that might have been the first school day, August 27th. With respect to sabotage of the orderly resolution of the complaint, for the entire pendency of that five-month period, the reason that Manhattan Beach Unified School District gave for not investigating was purportedly that the police were investigating themselves. What are you saying is the five-month period from when the school learned of the perpetrator's name or the lynch perpetrator? It's the time between actual knowledge of the school, which is July 25th, 2018, when the voicemail was heard, when Bendale was advised of the incident. Well, can that really be counted against the school since they didn't even know who the person was? Plaintiff submits that there was sufficient evidence included in that voicemail for the school to ascertain who it was. Is there any dispute as to the reason why they didn't investigate, that is that they believed that the police were investigating and the police told them not to investigate until they were done? There's no dispute. That is the stated rationale by Manhattan Beach Unified School District for not investigating. There is a dispute that it was reasonable or true that they actually believed that the police were investigating in that five-month period, especially because of the myriad of statements by Stephanie Hall and Bendale that they were in communication with the police, coupled with the unequivocal testimony by the relevant Manhattan Beach Police Department detective that no investigation was ever opened after that July 25th complaint was filed for them. So is it your position that there's a dispute of material fact? Yes. Yes, Your Honor. And what is it exactly? The dispute of material fact is whether the delay in initiating the investigation was attributable to perhaps an unskilled game of telephone between the police department and the relevant officials within the school, or whether the statements by Stephanie Hall and Bendale regarding the pendency of a police investigation were statements motivated by the desire to rationalize and explain an inexcusable failure to take any action. How does either one of those establish deliberate indifference? Well, as Brown states, there are myriad ways that a university or a funding recipient may engage in deliberate indifference, and one of those is a failure to apprehend and report critical aspects of the student's offending behavior. Here, the official conclusions of Manhattan Beach Unified School District in their Title IX report were contrary to the weight of the evidence regarding the pendency of the Manhattan Beach Police Department investigation. There was a false exoneration of Tyler Gordon listed in the official conclusions of the Title IX investigation. There was no mention of the on-campus encounters between plaintiffs during either her junior year or her senior year in the Title IX report, the threats to plaintiff on Snapchat, or the existence of other victims of Tyler Gordon, despite those such a testimony being available to Manhattan Beach Unified School District for the entire pendency of that five-month period between actual knowledge and the initiation. So you're saying actual knowledge of the rape, but the school doesn't have authority to make criminal investigations for a criminal incident that happens off-campus, but they would have authorities to investigate harassment on-campus. And so, what if you allege that there's a delay, and that it seems like they were reacting pretty quickly to whenever she complained about, you know, she would see him, and she'd be in his school path, and they would change and immediately try and rectify that. So that's, because the delay shouldn't be from the rape, right? Because that's not what they do. Let me back up. Plaintiff Jane Delwine and her parents gave notice to the school. There's no dispute that the school had notice of the off-campus rape during the month of August when the meetings took place. Right. And in multiple cases... And they certainly agree that they don't have authority. That's out. They don't have authority over that. Over a criminal investigation. Yes. What would you have wanted them to do with that voice mail? Firstly, I would have wanted them to interview the plaintiff promptly and gather contact information for the other victims of Tyler Gordon. That was known at the time of factual knowledge, too. To what end? To what end other victims of Tyler Gordon are probative evidence that what plaintiff is alleging happened actually did happen. So, I guess my point is, if the school found out it had all the proof in the world that Tyler Gordon raped your client in August or July, what did you want the school to do at that point? Well, most extreme discipline would have been appropriate given the substantial evidence. That's like a criminal violation, a serious criminal violation. Do you think just detention would have been sufficient? It seems like the Title IX claim is to prevent harassment on campus, and there could have been harassment on campus if Tyler was encountering her, but the school seems to be investigating that. I have created a list of things I think the Manhattan Beach Unified School District should have done in response to factual knowledge. Firstly, promptly investigate it per the uniform complaint procedures of Manhattan Beach Unified School District, given the substantial evidence that the rape had occurred and that they would be sharing a campus during the remainder of the year, which multiple district court cases have indicated alone may indicate severe impervasive harassment sufficient to deprive a plaintiff of educational opportunities. They should have paid better attention to communications by Manhattan Beach Police Department regarding the status of their investigation, so that they would not, for the next five months, attribute their failure to take reasonable action to a pending police investigation. Thirdly, they should have been a little bit more mindful about selecting classes for the two students, such that plaintiff's rapist was not coming out of her first period class at the beginning of the 2018-2019 school year, which plaintiff submits itself was sufficient to deprive plaintiff of educational opportunities. Plaintiff submits that Tyler Gordon should have been the one changing his schedule, given the substantial evidence of what had occurred. In Oregon, you don't have to change your schedule, right? Only in December of 2018, after the next door post exploded over social media. They didn't do both. Firstly, they didn't change his schedule. They suggested a change in his walking path and told him to not go to one club, and told him to leave after a certain period of the day, I think after fourth period. So they didn't change his schedule, and even when they did make those changes... They told him to leave by noon, I think it was, or something like that. They did, but this was, again, in December of 2018, after nearly five months of notice to the school. Fifth, they should have interviewed plaintiff earlier and gathered her knowledge about the rape. You know, and I know you have your points, I guess I have one question. I was looking at these cases on these Title IX cases, and they deal a lot with, or I think I haven't found the cases that deal with children. All those Title IX cases are dealing with college students, adults. This, our president, whether it's Harris Act, whether it's O-North, whatever, they're dealing with adults. Should we be looking at the issue of deliberate indifference when it comes to children differently than in those situations? Yes, and there is actually direct instruction from the Davis case on that point. The standard for deliberate indifference is... Let me rephrase. The standard is more stringent as applied to... Ugh. The conduct of lower-degree school funding recipients will be scrutinized to a greater degree than college and university conduct, per the instruction of the Davis case. What may be unreasonable in the context of a secondary school may not be unreasonable in the context of a university. So to answer your question, yes, I think schools face a heightened... grade schools face a heightened responsibility as compared to universities. Let me understand a little better your position with respect to the police informing the school district that the police were doing an investigation to keep out until we're done. You do not dispute that they said that, that they told the district that. You don't have any evidence that that's false? I apologize. That who told who what? The police told the school district that the police were investigating and the school district should keep out. We do dispute that. The testimony by Jennifer Leach, the relevant police detective within the police department, unequivocally disclaimed any knowledge of any conversation with any official of Manhattan Beach Unified School District that they were conducting an investigation. And she unequivocally testified that no investigation was ever opened after that complaint refusal form. So we do dispute that. Do you want to reserve some time for rebuttal? I would like to reserve some time for rebuttal. Thank you. Good morning. I may have pleased the court. I'm Amy Evanstad. I'm here for Appellees of Manhattan Beach Unified School District and Principal Bendale. So we have just heard that the primary issue that we're here to talk about today is deliberate indifference. And I think the primary issue with deliberate indifference that the plaintiff is honing in on is with respect to an investigation and whether that investigation was sufficient. I think one glaring fact that has not been addressed yet is the fact that plaintiff did not file a Title IX complaint or a formal written complaint. In fact, when she went to the police, she specifically signed a form saying, I do not want the police to investigate this. And current Title IX regulations presently, although they were in effect at the time of this incident, still give some guidance on what is reasonable under the circumstances. And presently under those regulations, a school cannot contact a respondent to investigate an incident of sexual assault if there is no formal written complaint. The school can offer supportive measures to the victim. But without the victim's willingness to sign a complaint stating, I want an investigation, the school should not contact the respondent out of fear of potential retaliation. And here we have clear plaintiff's insistence on anonymity. Sure, her parents were going to the school and saying, I want X, Y, Z. But by the time the plaintiff actually spoke to the school about this, she declined any types of measures that would draw attention to herself. She didn't want a security escort. She didn't want the school to speak with Tyler Gordon to bring attention to the issue. She feared he would retaliate against her if she were to bring light to this. She asked for some schedule changes, and it was given. The allegations that now, in hindsight, there was a verbal request to investigate or a verbal Title IX complaint, is simply not sufficient to trigger the criminal investigative duties on a school that the plaintiff is trying to impose here. Especially when we are dealing with a situation of minors that have a constitutional right to go to school, a free and appropriate right to public education. Their rights on campus cannot simply be restricted based on a parent. Even plaintiff herself was upset that the parent went above her head to the counselor and told the counselor about the issue. Plaintiff skipped meetings with that counselor because the mother did that. Clearly there was some disconnect between the parents, but without a formal complaint, the school did the best that it could under the circumstances. So you don't dispute the plaintiff's position that the school district was not relying on any, reasonably relying on any assurance by the police that the police were doing an investigation? I do think that's an important point because as mandated reporters under the Child Abuse and Neglect Reporting Act, which only applies to children, to minors, schools have a duty to report to the police any sort of sexual assault, which is exactly what we did here. We have Stephanie Hall saying she called the police. The police told her that she was investigating. Jennifer Leach was not uncritical in her testimony. She actually said, I'm not sure. One point that was made at the end of Plaintiff's argument was that there is evidence here that there was no information provided, the school district that the police were investigating, and that's a disputed factual issue. What's your position with respect to that? I don't agree that it's a disputed factual issue because only one detective was deposed here, and that detective said she doesn't remember. She knows she spoke with a woman, but she doesn't remember exactly what she said. But there were no ongoing communications between the police about a minor's file to the school. In fact, when the school tried to ask the police about what was going on in November, there was an email from the police where the police were saying, I can't talk to you about a minor's investigation, but I'm declaring you to investigate on your own at this point. The school reported it out to the authorities for the authorities to investigate the rape. When the on-campus issue of seeing Tyler Gordon on campus was brought to the school, they responded at every discussion about that issue with different and new remedial measures at every step of the way. The question is whether or not they should have investigated at that point at the beginning. In August when they had that meeting, I think the 27th. Yeah, so on the 27th was actually just one week after the police had already met with Tyler Gordon and instructed him to stay away from her, go to a diversion program. So the police were still doing some activity on the case, maybe not an investigation, but a school district of high school students is powerless to conduct a criminal-type inquiry of off-campus conduct. They don't have subpoena power. They can't do DNA tests on clothing. No, no, we're not talking about a DNA investigation. We're talking about the school's own investigation. Why didn't they do that at that time? So at that point, the investigation consisted of speaking with the plaintiff, asking her what is it that she's seeing, what is it that you need. There were actually many meetings where the counsel requested to speak with the plaintiff in September, in October, and she just didn't go to the meeting. So they kept reaching out to the parent. They kept trying to offer alternatives. The petitioner thought that she did not comply with the school's request for an investigation. I'm not going to blame the petitioner or Ms. Jane Doe for any aspect of this horrible circumstance that we're here to discuss today. However, that's the reason that a formal Title IX complaint is required, to put the school on written notice that I want an investigation and I want to sign a complaint against this perpetrator. After being given multiple opportunities to do that, that's when the meeting... I just want to get a clear answer from what the school's position is. What was the reason for not investigating in August, beginning there in August? I just need to know that. The school was under the belief that there was a criminal investigation that was ongoing, and if they spoke with a perpetrator or potentially other witnesses, that could jeopardize... I guess that's a disputed fact. Should this go back? I don't agree that it's a disputed fact, but I don't think that, even if it were, it would be enough to remand this back down, because there's so many other facts that show there was no deliberate indifference here. Significantly more facts than there even was in the Carouset case, which found that a multiple-month, I think it was eight-and-a-half-month, delay in investigation was still not enough to impose a finding of deliberate indifference on the school, even a failure to tell the respondent or the petitioner in Carouset about the status of the investigation was still not enough for deliberate indifference in Carouset. So does the Title IX duty, does it have a nexus to campus at all? So say, for example, rape was reported in August, but it had nothing to do with campus. So she's not saying anything that affects her at all on campus. Does the school have a duty to investigate at that point, just knowing that a student-on-student rape occurred off campus? I would say that, at that point, the school has a duty to offer remedial measures, and that the duty to investigate is triggered by a formal written complaint. But isn't Title IX's duty harassment on campus, or is it harassment off campus? I agree that Title IX is with respect to on-campus conduct, and if there is actual notice of on-campus conduct that is going on. Well, yeah, I guess that's my point. In August, there was no on-campus, there was no nexus to campus at that point. The school hasn't started yet. Exactly, exactly. And as soon as school did start. Because at that point, it's just a criminal investigation into rape that happened off campus. I just don't understand what should have happened. I do completely agree. And even at that point, we had just learned of the perpetrator's name as of the first week of school, as was just admitted by my colleague when he was up here. Instances start happening right away. There are numerous meetings that occurred right after that August meeting, such that the school acted immediately. So at that point, wouldn't those requirements of Title IX engage? I do think that the requirements of Title IX to appropriately respond to the situation were triggered. And I do think they were making every effort to respond to it. Every time she requested a meeting, it was given. She was offered a security escort from the very get-go. They offered to move her classes, have her come in later in the day if she would like. The problem is to speak with the respondent, which could potentially trigger her fears of retaliation on campus without a formal written complaint. I don't think it was unreasonable for the school to take that path, to wait to speak with the respondent until this blew up in social media. And he obviously knew then that he was being accused of this crime by this person because it was all over social media. It was unavoidable at that point to get the respondent involved when the plaintiff at the beginning feared retaliation. So instead of involving him, they focused on what they could do to help her. They responded to every request that she had. This wasn't a situation where she was completely ghosted, for example, and just left to her own devices. We had a team that was following up on her regularly to make sure that she was comfortable on campus. And perhaps she wasn't given the exact things that she wanted. We know she wanted the perpetrator to be kicked off the wrestling team and to be kicked off campus. That was her two primary asks. And it has been the ask all throughout her senior year and all throughout this litigation. But an aggrieved victim is not entitled to the precise remedy that they seek. The school will be subjecting itself to liability on the perpetrator's side, as we've seen in erroneous outcome claims. If we were to have willy-nilly kicked him off campus or denied him participation in athletics without having some sort of criminal justification for doing so, or some sort of on-campus conduct that supported such drastic measures after a hearing had taken place. And without the formal written complaint from Ms. Stowe to trigger that process at the outset of the school year, there was no basis to implement disciplinary proceedings against this perpetrator. It's a sticky situation. It's not ideal in anyone's situation. The perpetrator wasn't happy. Ms. Stowe wasn't happy. The school wasn't happy. No one wanted this to happen to her. But when you're faced with something horrific and responding to it, while trying to balance the constitutional rights and the rights of privacy of two minors that are involved, I think the school here acted in a manner where it took those issues into account. It tried to balance those realties. And those are the types of things that Davis talked about when it talked about Title IX liability and the peer-on-peer harassment context when you're dealing with minors in schools. Because there can be things like name-calling, teasing of minors that may not necessarily trigger Title IX liability, but might trigger a response so that way it doesn't escalate. And that's exactly what we did here is we tried to respond to her in every way that we could while trying to balance everyone's rights and their situation. So I think under the facts of the Carouset case, the Owen case, Ninth Circuit precedent, which talks about the requirement that there be deliberate indifference before Title IX liability can lie, there must be an official decision not to remedy the harassment before Title IX liability may lie. And based on that precedent, I do think here that the summary judgment ruling should be affirmed because there is no evidence of deliberate indifference here. And if there's no further questions from the Court, I will submit. Thank you, Counsel. With respect to the contention that no filed complaint was issued by the plaintiff, that's a red herring. There are guidelines by Manhattan Beach Unified School District governing the Uniform Complaint Procedure Investigations, which Bendale declared were an accurate overview of the Uniform Complaint Procedures, which specify that no formal written complaint is required by a complainant in order to trigger the procedures. It specifies that a plaintiff does not need to recite a magic incantation or submit it in a particular form. However, information suggesting that a serious act of rape like this occurred off campus and that the two individuals are attending school with each other suffices to trigger the obligation. With respect to plaintiff's request for quote-unquote anonymity, she testified that she didn't necessarily want complete anonymity, but she wanted relevant information to be transmitted through proper channels within the district so that the matter could be handled reasonably. And here it was handled clearly unreasonably. With respect to the contention that she didn't want the school to discuss the allegations with Tyler Gordon, I think she was equivocal on that point. But regardless, the school could have apprehended the testimony of the other victims of Tyler Gordon, which the information for those victims was available to the school as early as August of 2018. The Rost case cited in the answer brief and the reply brief indicates that coordination with the police and prompt coordination with the police is a pertinent consideration in determining whether a response is effective or not. And here there's a genuine dispute of material fact about whether they were even in communication with the police, given the clear discrepancies between the conclusions drawn by the district versus the testimony of the relevant police detective. And Stephanie Hall did testify that that was the particular police detective that she spoke with from the police, from which she drew her conclusions about the purported tendency of a police investigation. That's your overtime if you want to wrap up. Genuine disputes of material fact permeate this file. I'd submit that the amendment should be remanded, given the substantial evidence of deliberate indifference on the part of the district. Thank you, Your Honor. Thank you, Counsel. This case will be submitted, and we will be in recess until tomorrow. All rise. Hear ye, hear ye. All persons having had business before the Honorable United States Court of Appeals for the Ninth Circuit shall now depart for this court. This session stands adjourned.
judges: SCHROEDER, BUMATAY, MENDOZA